IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Case No. 19 CR 472 |
| | ) | |
| CHRISTOPHER HOPKINS | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Christopher Hopkins's father is in poor health. Mr. Hopkins, who is serving a prison term pursuant to a sentence imposed by the Court, says his father needs a full-time caregiver and wishes to step into that role. To that end, among other reasons, Mr. Hopkins has filed a *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons set forth below, the Court denies the motion.

### Background

In October 2017, the Bureau of Alcohol, Tobacco, Firearms, and Explosives, in conjunction with the Drug Enforcement Administration and the Cook County Sheriff's Office, began an investigation of a drug trafficking organization. Mr. Hopkins was a target of the investigation. The investigation revealed that Mr. Hopkins distributed methamphetamine to two cooperating sources on three different dates from April through June 2018. In June 2019, federal agents arrested Mr. Hopkins at a motel where he was staying. In his motel room, agents found crack cocaine, a mixture of fentanyl and heroin, and MDMA. In addition, agents located a loaded handgun under Mr. Hopkins' pillow. Following his arrest, Mr. Hopkins waived his Miranda rights and admitted that he sold heroin, crack cocaine, and Xanax pills to customers at the motel.

Mr. Hopkins also admitted to owning the loaded handgun recovered from the motel room.

In August 2019, Mr. Hopkins was charged by indictment with multiple narcotics and firearms offenses. The case was initially assigned to Judge Charles Norgle. Mr. Hopkins filed a motion to suppress, which Judge Norgle denied after overruling Mr. Hopkins' request for an evidentiary hearing. In October 2022, the case was reassigned to the undersigned judge. Mr. Hopkins entered a plea of guilty to counts 6, 7 and 8 of the indictment in December 2022. The Court sentenced him to concurrent seventy-two months prison terms on counts 6 and 7 and a consecutive sixty month term on count 8.

Mr. Hopkins appealed, challenging Judge Norgle's denial of the motion to suppress. The Seventh Circuit vacated the judgment and remanded the case for an evidentiary hearing on the motion to suppress. The Court held a hearing in October 2024 and thereafter denied the motion.

In December 2024, Mr. Hopkins entered a plea of guilty to counts 6 and 8 of the indictment. He admitted that in total, he possessed with intent to distribute 520.9 grams of methamphetamine, 52.4 grams of cocaine base, 10.1 grams of cocaine, 9 grams of fentanyl, and 455.5 grams of N-Ethylentylone from April 2018 through June 2019. In April 2025, the Court sentenced Mr. Hopkins to a sixty month prison term on count 6 (possession with intent to distribute a controlled substance) and a consecutive sixty month prison term on count 8 (possession of a firearm in furtherance of a drug trafficking offense), for a total of 120 months, followed by three years of supervised release.

Mr. Hopkins is incarcerated at FCI Milan in Michigan, and his anticipated release date is December 12, 2027, about thirteen months from now. He has been in custody since June 2019 and thus has served just short of seven and one-half years on his ten-year sentence. He has moved for compassionate release based on his rehabilitation while imprisoned, his own medical condition, and the need for a caregiver for his father.

**Discussion**

A defendant may bring a motion for compassionate release after he has exhausted all administrative rights to appeal a failure of the Bureau of Prisons (BOP) to bring a motion on the defendant's behalf, or after thirty days have elapsed since the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). If a defendant has met this exhaustion requirement, a court considering a compassionate release motion conducts a two-step analysis. First, the defendant must identify an "extraordinary and compelling" reason warranting a sentence reduction. *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021). Second, upon such a finding, the district court must consider any applicable sentencing factors in 18 U.S.C. § 3553(a) to determine whether and to what extent a sentence reduction is appropriate. *United States v. Peoples*, 41 F.4th 837, 840 (7th Cir. 2022).

The Seventh Circuit has held that district courts have broad discretion in determining what constitutes "extraordinary and compelling reasons" under the statute. *United States v. Gunn*, 980 F.3d 1178, 1180-81 (7th Cir. 2020). The district court must "consider[ ] the applicant's individualized arguments and evidence," *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022), but ultimately the "movant bears the burden of establishing 'extraordinary and compelling reasons' that warrant a sentence

reduction." *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021). The Guidelines promulgated by the United States Sentencing Commission identify several circumstances that may qualify as "extraordinary and compelling" reasons potentially warranting compassionate release, including, relevant to Mr. Hopkins' motion, "[m]edical [c]ircumstances of the [d]efendant" and "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." U.S.S.G. §§ 1B1.13(b)(1), (b)(3)(C).

### A. Administrative exhaustion

There is a dispute over whether Mr. Hopkins exhausted internal BOP procedures as required by the statute. The Court assumes for purposes of discussion that Mr. Hopkins has sufficiently exhausted internal BOP procedures for seeking compassionate release through his letter sent to warden Rardin on December 31, 2025, to which he received no response. Def.'s Mot. for Compassionate Release, Letter dated 05/13/2026 (Warden Letter) at 2 (dkt. no. 172); *see* 18 U.S.C. § 3582(c)(1)(A).

### B. Extraordinary and compelling circumstances

In support of his request for compassionate release, Mr. Hopkins cites: (1) his rehabilitation while imprisoned; (2) his own medical circumstances; and (3) the need to serve as a primary caregiver for his elderly father.

First, Mr. Hopkins' efforts toward rehabilitation have indeed been significant, and the Court commends him for this. Mr. Hopkins obtained his GED and completed the Residential Drug Abuse Treatment Program while imprisoned. But under 28 U.S.C. § 944(t) and U.S.S.G. § 1B1.13(d), rehabilitation, standing alone, does not constitute an

extraordinary and compelling reason for a sentence reduction under section 3582(c)(1)(A). *See, e.g.*, *United States v. Peoples*, 41 F.4th 837, 842 (7th Cir. 2022).

Second, Mr. Hopkins contends that his chronic medical conditions justify compassionate release. The Sentencing Guidelines offer some indication of the types of medical conditions that may constitute extraordinary and compelling reasons for compassionate release, including terminal illnesses and medical conditions that "substantially diminish[ ] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(B). Examples of terminal illnesses include "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* § 1B1.13(b)(1)(A). Mr. Hopkins, who is 51 years old, lists as his chronic medical conditions "severe [b]i-[l]ateral [c]arpal [t]unnel" in both wrists, "[u]lnar [e]ntrapment in both elbows, "Type 2 Diabetes Mellitus," "[d]iabetic nerve pain" in both feet, and three COVID-19 infections despite being vaccinated. Warden Letter at 2. Nonetheless, Mr. Hopkins has not shown that these conditions cannot be managed appropriately in a prison environment. Even when considered together, the Court cannot conclude on the present record that Mr. Hopkins' medical conditions rise to the level of extraordinary and compelling reasons for a sentence reduction.

To the extent that Mr. Hopkins suggests that his medical conditions pose an increased risk for severe COVID-19 infection, "for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason" for compassionate release. *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021). Because Mr. Hopkins received the COVID-

19 vaccine and subsequent boosters, *see* Warden Letter at 2, he has not shown that he is unable to receive or benefit from a vaccine. *Broadfield*, 5 F.4th at 803 (noting this as an exception to the general rule).

Third, Mr. Hopkins requests compassionate release so that he may serve as a caregiver for his ailing father, arguing that his case matches one of the examples that the Sentencing Guidelines set forth as a basis for compassionate release: "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." U.S.S.G. § 1B1.13(b)(3)(C). Mr. Hopkins says that his father is eighty-five years old and in need of home health care due to mobility limitations, diabetes, and post-traumatic stress disorder resulting from his time in the military. The Court assumes for the purpose of discussion that Mr. Hopkins' father's condition is serious enough to qualify as "incapacitation," notwithstanding the lack of medical documentation in the record.

Even so, Mr. Hopkins has not shown that he is the only available caregiver for his father, which is a requirement under section 1B1.13(b)(3)(C). *See United States v. Gross*, No. 17 CR 37 HAB, 2024 WL 4100325, at *3 (N.D. Ind. Sept. 5, 2024); *United States v. Davis*, No. 12 CR 10 JMS CMM 1, 2024 WL 3924586, at *3 (S.D. Ind. Aug. 23, 2024).

Mr. Hopkins attempts to show that he is the only reasonably available caregiver by stating that his brother, Okito, has life circumstances—including becoming a widower in December 2025—that would make providing care burdensome. Although the Court is sympathetic to the brother's plight, this is not enough for Mr. Hopkins to establish his unavailability. Specifically, the fact that it would be difficult for Okito to provide care

does not, without more, render him unavailable. It is also worth noting that Mr. Hopkins makes brief reference to a sister, Tiffany—indeed, she took the photographs provided in the record of the father's home—but does not offer a reason why she cannot assist in caring for their father. Finally, the fact that Mr. Hopkins was the primary caregiver for his father before his term of imprisonment is insufficient to establish that no other individual is available to provide care. For these reasons, Mr. Hopkins has not shown that he is the only reasonably available caregiver. He has therefore failed to establish that the need to provide care for his father is an extraordinary and compelling reason supporting compassionate release.

Lastly, a court must assess all grounds for compassionate release together, not just separately. *United States v. Vaughn*, 62 F.4th 1071, 1072-73 (7th Cir. 2023). Put another way, "the whole may be greater than the sum of the parts." *United States v. Craig*, No. 3:20 CR 50013, 2025 WL 2108723, at *4 (N.D. Ill. July 28, 2025). The Court is not persuaded that this is such a case. The combination of Mr. Hopkins' rehabilitation, medical circumstances, and his father's need for a caregiver is not similar in gravity to the circumstances described in paragraphs (1) through (4) of the Sentencing Guidelines. U.S.S.G. § 1B1.13(b)(5). Accordingly, Mr. Hopkins has not established any extraordinary and compelling reason supporting compassionate release.

**C. Sentencing factors in section 3553(a)**

Even if the Court were to have found that Mr. Hopkins had established an extraordinary and compelling reason, the Court would nevertheless deny his motion for compassionate release, because the sentencing factors under 18 U.S.C. § 3553(a) do

not weigh in his favor. The relevant factors include Mr. Hopkins' history and characteristics; the nature and circumstances of the offenses of conviction; promoting respect for the law; providing just punishment; affording adequate deterrence; protecting the public from further crimes by Mr. Hopkins; providing him with needed education, training and treatment; and the applicable Guidelines range. 18 U.S.C. § 3553(a)(1)-(6).

Starting with Mr. Hopkins' history and characteristics, this is his ninth prison term. Mr. Hopkins was sentenced in 1992 to a five year term for possession of narcotics with intent to deliver; he served six months of that sentence. In 1993, he was sentenced to five years for armed violence and possession of narcotics with intent to distribute. He served approximately sixteen months of that sentence before being paroled. While on parole, Mr. Hopkins was charged with armed violence after he shot someone in the leg. He was given a ten year sentence for this offense and served a little short of five years before being paroled in October 2001. Less than a year later, while still on parole, Mr. Hopkins was charged with aggravated unlawful use of a weapon, for which he was sentenced to three years and paroled after a year. Between 2005 and 2015, Mr. Hopkins was convicted of six additional narcotics offenses, all before he committed the offenses in this case.

The nature of Mr. Hopkins' offenses of conviction also weighs against early release. The Court sentenced him to a total of ten years of imprisonment. A reduced sentence would insufficiently reflect the seriousness of Mr. Hopkins' offense given the significant quantities of dangerous narcotics involved and his related possession of a firearm. *See* 18 U.S.C. § 3553(a)(2)(A). The trafficking of illegal drugs adversely

impacts the community, and Mr. Hopkins' possession of a loaded handgun in connection with his drug trafficking increased the danger inherent in his crime.

On the positive side, Mr. Hopkins has obtained a GED and completed the Residential Drug Abuse Treatment Program while incarcerated. But these factors alone do not outweigh the other section 3553 factors that counsel against early release. Although Mr. Hopkins has served close to seven and one-half years on his ten-year sentence, because he has demonstrated a history committing crimes while on parole, there is a need for specific deterrence in this case to promote respect for the law.

In sum, the Court concludes that a sentence reduction in this case is not supported by consideration of the sentencing factors under 18 U.S.C. § 3553.

**Conclusion**

For the foregoing reasons, the Court denies Mr. Hopkins' motion for compassionate release [dkt. 169]. The Clerk is directed to mail a copy of this order to Christopher Hopkins, No. 54119-424; FCI Milan P.O. Box 1000; Milan MI 48160.

Date: November 5, 2026

MATTHEW F. KENNELLY
United States District Judge